ZOLL & BRANCH, P.C., Plaintiff,
Counterclaim Defendant, and
Respondent,

v.

Alan ASAY, Defendant, Counter–
Claimant, and Petitioner.

No. 940568.

Supreme Court of Utah.

Feb. 7, 1997.

B. Ray Zoll, Peter de Jonge, Salt Lake City, for Plaintiff, Counterclaim Defendant, and Respondent.

Michael N. Zundel, Kent W. Hansen, Salt Lake City, for Defendant, Counter–Claimant, and Petitioner.

## ON CERTIORARI TO THE UTAH COURT OF APPEALS

HOWE, Justice:

We granted certiorari to review a decision of the court of appeals made pursuant to rule 31, Utah Rules of Appellate Procedure, which allows an expedited decision without a written opinion. Plaintiff law firm sued defendant for slander, conversion, and fraud; defendant counterclaimed for wages that he alleged plaintiff wrongfully withheld when he voluntarily quit his employment with plaintiff. We are here concerned only with the counterclaim.

The trial court awarded defendant wages of $1,500, together with a penalty of $6,000, pursuant to Utah Code Ann. § 34–28–5(1), plus interest, attorney fees of $12,000, and costs. Plaintiff appealed, and we transferred the case to the court of appeals. After a rule 31 hearing, that court concluded that defendant was not entitled to the penalty and remanded the case to the trial court for a reduction in the judgment of that amount. The court of appeals also denied defendant's request for attorney fees on appeal.

We granted defendant's petition for certiorari and assumed jurisdiction under Utah Code Ann. § 78–2–2(3)(a) to address two narrow questions:

(1) Did the court of appeals err when it concluded that section 34–28–5(1) (1969),[1] part of the Utah Payment of Wages Act (the Act), did not entitle defendant to a civil penalty?

(2) Did the court of appeals err when it denied defendant's request for attorney fees on appeal?

The interpretation of statutes poses a question of law, which this court reviews for correctness and without deference to the lower court's conclusions. *Bonham v. Morgan,* 788 P.2d 497, 499 (Utah 1989). This standard applies whether we review conclusions made by the trial court or the court of appeals. *State v. Hodson,* 907 P.2d 1155 (Utah 1995).

## CIVIL PENALTY UNDER SECTION 34–28–5(1)

This court has not previously had occasion to interpret section 34–28–5(1) of the Act. We therefore "note the directive that we construe statutes liberally with a view to effect[ing] their objects and to promot[ing] justice. Utah Code Ann. § 68–3–2. Upon a question of first impression such as this, it is our duty to accord that section effect." *Brickyard Homeowners' Ass'n Management Comm. v. Gibbons Realty Co.,* 668 P.2d 535, 538 (Utah 1983) (citation omitted).

The statute in question provides:

**34–28–5. Separation from payroll—Resignation—Suspension because of industrial dispute.**

(1) Whenever *an employer separates* an employee from his payroll, the unpaid wages of such employee shall become due immediately, and the employer shall pay such wages to the employee within 24 hours of the time of *separation* at the specified place of payment.

In case of failure to pay wages due an employee within 24 hours of a demand therefor, the wages of such employee shall continue from the date of *separation* until paid, but in no event to exceed 60 days, at the same rate which the employee received at the time of *separation.* The employee may recover the penalty thus accruing to him in a civil action. This action must be commenced within 60 days from the date of *separation.* Any employee who has not made a demand for payment shall not be entitled to any such penalty *under this subsection.*

---

**1.** The Utah Legislature amended the statute in 1989 and again in 1995. As we point out later in this opinion, those changes are helpful to the extent that they shed some light on the statute's purpose. The section we here address has undergone no substantive changes. Defendant's action arose under the 1969 version of the statute.

(2) Whenever *an employee* (not having a written contract for a definite period) *quits or resigns* his employment, the wages earned shall become due and payable not later than 72 hours thereafter, unless such employee shall have given 72 hours' previous notice of his intention to *quit*, in which latter case such employee shall receive his wages at the specified place of payment at the time of *quitting.*

(3) In the event of the *suspension of work* as the result of an industrial dispute, the wages earned and unpaid at the time of this *suspension* shall become due and payable at the next regular payday, as provided in Section 34–28–3, including without abatement or reduction all amounts due all persons whose work has been *suspended* as a result of such industrial dispute, together with any deposit or other guaranty held by the employer for the faithful performance of the duties of the employment.

Utah Code Ann. § 34–38–5 (1969) (emphasis added). The Act "regulates Utah employers' payment of wages to their employees." *Smith v. Batchelor,* 832 P.2d 467, 469 (Utah 1992).[2] It "imposes duties on the employer pertaining to notice and record keeping and the timely and regular payment of wages." *Action Elec. Co. v. Industrial Comm'n,* 636 P.2d 474, 477 (Utah 1981).[3]

■■■ Defendant contends that the second paragraph of section 34–28–5(1) ("the penalty clause") applies not only when the employer terminates or discharges an employee but also when an employee such as he quits voluntarily (subsection (2)) or when employees go on strike (subsection (3)). We disagree. It is clear that the penalty can be imposed only when there has been a *separation.* The word *separate* is not defined in the Act, so we look to the common usage of the word. *Webster's* defines the verb *separate,* in pertinent part, as "to part by a legal

separation ... to sever contractual relations with; discharge." *Webster's New Collegiate Dictionary* 1056 (1973). The fundamental rule of statutory construction is that statutes are generally to be construed according to their plain language. Unambiguous language in the statute may not be interpreted to contradict its plain meaning. *Salt Lake Therapy Clinic v. Frederick,* 890 P.2d 1017, 1020 (1995) (and cases cited therein).

■■■ Section 34–28–5 covers three situations in which the employer's obligation to pay wages differs. Only failure to pay wages under subsection (1) triggers the penalty clause, i.e., "under this subsection." The clause makes it clear that the penalty is imposed only when a *separation* occurs. The paragraph preceding the penalty clause makes equally clear that a separation occurs only when an employer terminates an employee. The word "separation" appears five times in the two paragraphs of subsection (1), yet it does not appear at all in either subsection (2) or (3). Instead, subsection (2) refers to an employee who "quits or resigns," and subsection (3) relates to "suspension of work" due to an industrial dispute. "We presume that the legislature used each word advisedly and give effect to each term according to its ordinary and accepted meaning. We must be guided by the law as it is. ... When language is clear and unambiguous, it must be held to mean what it expresses, and no room is left for construction." *Nelson v. Salt Lake County,* 905 P.2d 872, 875 (Utah 1995) (citations omitted).

The language and syntax of section 34–28–5(1) communicate the ambit of the penalty clause. "[T]he distinction between a subsection and an independent section of a statute is that the subsection, by its nature, is placed within a context and thereby limited to the degree that the independent section is not." 2A Norman J. Singer, *Sutherland Statutory*

---

**2.** Smith left the defendant's employ after "a dispute over vacation pay." 832 P.2d at 469. The opinion does not make clear whether the separation was voluntary or involuntary. The issue here under review was not raised in that case.

**3.** *Action Electric Co.* dealt with a prevailing wage rate dispute. The opinion in dictum enumerates and construes, without benefit of analysis, the

provisions of the various sections of the Act. Inasmuch as the opinion concludes that chapter 28 did not apply to the issue before the court, cursory mention of the penalty for *both voluntary and involuntary severance* "on pain of a prescribed penalty" is not binding on our ruling in this case, and the language in that dictum is expressly disavowed. 636 P.2d at 475.

*Construction* § 47.01 (5th ed.1992) (footnote omitted).[4] Had the legislature intended to apply the penalty clause to all three types of work cessation, it could have easily placed it after the three subsections as an independent section and expressly applied the penalty clause to all three. Instead, the juxtaposition of the penalty clause to the first paragraph of subsection (1) and the limitation of the penalty to the instance where there has been a separation demonstrate that the legislature chose this particular section structure advisedly to accord greater protection to employees who have been separated from their employers' payrolls involuntarily, often with little or no advance notice, and who may not be able to secure new employment immediately. The penalty protects those persons who are most likely to need their wages immediately, and concomitantly imposes upon the employer the greatest obligation in those instances.[5] Conversely, a lesser burden falls upon the employer in those instances when work cessation is the employee's choice, not the employer's.[6]

■ We conclude that the penalty clause applies only to situations where the employer separates (terminates or discharges) an employee and fails to pay that employee accrued wages within twenty-four hours of a demand. As written, the penalty clause does not apply to instances where the employer fails to pay wages due employees who quit or whose work was suspended as a result of an industrial dispute. The limitation is in the language itself, and the court of appeals correctly concluded that defendant was not entitled to the penalty.

### DENIAL OF ATTORNEY FEES ON APPEAL

■ Defendant next contends that the court of appeals erred in denying him attorney fees on appeal, arguing that he prevailed on the "main" issue (liability of plaintiff for wages owing to defendant) even though he lost on the issue of his entitlement to the penalty. At the outset, we observe that where a statute provides for the payment of attorney fees to the "prevailing party" or the "successful party," we have held that such a party is entitled to fees in the trial court and on appeal if the judgment is affirmed. *First Southwestern Fin. Servs. v. Sessions,* 875 P.2d 553, 556 (Utah 1994); *Wallis v. Thomas,* 632 P.2d 39, 43 (Utah 1981); *Coates v. American Econ. Ins. Co.,* 627 P.2d 92, 94 (Utah 1981). We have also held that when a contract provides for the payment of attorney fees in a suit brought under a contract, we will award fees only in accordance with the terms of the clause affording fees. *Turtle Management, Inc. v. Haggis Management, Inc.,* 645 P.2d 667, 671 (Utah 1982). The same should hold true when construing a statute providing for the award of fees. Only if a party has fully complied with the terms of the entitling statute should fees be awarded.

We thus turn to the specific provision of section 34–27–1 under which defendant contends that he was entitled to fees on appeal in the court of appeals. That section provides:

Whenever a[n] ... employee shall have cause to bring suit for wages earned and due according to the terms of his employment and shall establish by the decision of the court that the amount for which he has brought suit is justly due, ... then it shall be the duty of the court before which the case shall be tried to allow to the plaintiff[7] a reasonable attorneys' fee in addition to the amount found due for wages, to be taxed as costs of suit.

It is to be emphasized that the foregoing section provides for attorney fees when an employee bringing suit for "wages earned and due" establishes "by decision of the court that the amount for which he has brought suit is justly due." Therefore any award of fees turns upon success as to those elements,

---

4. The 1995 amendments restructured subsection (1) into further subsections, emphasizing the limitation of the penalty clause to subsection (1).

5. The distinction is made clear in the 1995 amendment, which sets the date on which wages of an employee who quits or resigns become due and payable as the next regular payday.

6. That classification disposes of plaintiff's argument that the court of appeals' ruling violated the equal protection clauses under both state and federal constitutions.

7. Defendant in the instant case is the counterclaimant in the wage claim.

**596**

not upon a determination that a party *prevailed* in general or on the *main* issue. Here, defendant brought suit for his last two weeks' unpaid wages ($1,500) and for an additional sixty days' wages ($6,000) which comprise the penalty. He was successful in the court of appeals in defending his award of the $1,500 but unsuccessful as to the other $6,000 of wages comprising the penalty. We are thus led to conclude that defendant failed to establish "by the decision of the court [of appeals] that the amount for which he has brought suit is justly due."

This result comports with the reasoning behind allowing attorney fees on appeal to a party who has been awarded fees in the trial court pursuant to a contract or statute, when the judgment is affirmed on appeal. In *Management Services Corp. v. Development Associates,* 617 P.2d 406, 409 (Utah 1980), we observed that a successful plaintiff in the trial court that is awarded fees would have its rights diminished if it is required to successfully defend its recovery on appeal at its own expense. That reasoning, however, fails to support an award of fees on appeal to a party that cannot successfully defend on appeal its recovery in the trial court. Such is the instant case where the employer justifiably appealed to correct an overaward made by the trial court. Requiring defendant to fully and completely defend his trial court recovery on appeal before he is entitled to fees on appeal is further justified in that the statute makes no provision for the payment of fees to the employer under any circumstances even though it may be successful at trial and on appeal. The employee enjoys the advantage of potential recovery of attorney fees without the risk of liability for the employer's attorney fees, and thus requiring full compliance with the statutory requirements is warranted.

The order of the court of appeals is affirmed.

ZIMMERMAN, C.J., STEWART, Associate C.J., and DURHAM and RUSSON, JJ., concur in Justice HOWE's opinion.