**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**May 19, 2010**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

TRACY RAWLINGS,

       Plaintiff - Appellant,

v.

GILT EDGE FLOUR MILLS, INC.

       Defendant - Appellee.

No. 08-4201
D.C. No. 1:07-CV-00031-DAK
(D. Utah)

**ORDER AND JUDGMENT**[*]

Before **HARTZ, HOLLOWAY** and **TYMKOVICH**, Circuit Judges.

## I. INTRODUCTION

This appeal of five separate decisions boils down to two inquiries: 1) whether

Plaintiff Tracy Rawlings was owed his attorney's fees; and 2) whether that question

should have been certified to the Utah Supreme Court. Since the district court answered

both questions properly within its discretion, we affirm both rulings.

## II. BACKGROUND

Mr. Rawlings was an employee of Defendant Gilt Edge Flour Mills, Inc., from

2001 to 2006. App. 0001 (Complaint & Jury Demand). In 2005, his right index finger

---

[*] This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. It may be cited, however, for its
persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

was amputated by one of Gilt Edge's flour-packing machines. *Id.* After he lost his finger, Mr. Rawlings submitted two claims, one to the Utah Labor Commission's Workers' Compensation Division and the other to the Commission's Occupational Safety and Health Division (OSHD). *Id.* When the Workers' Compensation Division released Mr. Rawlings to return to work, Mr. Rawlings contacted Gilt Edge and discovered he had been terminated. *Id.* Mr. Rawlings filed suit against Gilt Edge in the United States District Court in Utah. *Id.* In two causes of action he asserted Gilt Edge had violated public policy by wrongfully terminating him for filing for workers' compensation benefits and for reporting the incident to OSHD. *Id.* at 0003-5. He demanded compensatory, consequential, and punitive damages as well as reasonable attorney's fees. *Id.* at 0006.

After a three day trial, the jury found by a preponderance of the evidence that Mr. Rawlings had been terminated for reporting the finger-amputation incident to OSHD, but not because he filed for workers' compensation benefits. App. 0013 (Special Verdict). The jury awarded $18,472.00 in compensatory damages but did not award any punitive damages. *Id.* at 0014. At the court's request, Mr. Rawlings drew up a proposed judgment. App. 0039 (Judgment). The last lines awarded Mr. Rawlings attorney's fees "as provided by law" in addition to the $18,472.00 in compensatory damages. *Id.* at 0040.

Gilt Edge moved to disallow attorney's fees. App. 0016 (Defendant's Motion to Disallow Attorneys' Fees). The District Court granted Gilt Edge's motion to disallow fees, using Mr. Rawlings' proposed judgment but striking the last lines regarding attorney's fees. App. 0040 (Judgment); App. 0042 (Memorandum Decision & Order).

Mr. Rawlings filed a Rule 59 Motion to Amend the Judgment to its unaltered form, a Motion to Award Attorney's Fees, and a Motion to Certify the Question of Attorney's Fees to the Utah Supreme Court.  App. 0047, 0064, 0057.  The District Court denied all three motions and Mr. Rawlings appealed those rulings, the granting of Defendant's motion disallowing attorney's fees, and the court's alteration of the judgment.

## III.  DISCUSSION

Although Mr. Rawlings appeals five separate district court decisions, two issues are dispositive: whether Mr. Rawlings should have been awarded his attorney's fees and whether the question should have been certified to the Utah Supreme Court.  Since the answer to the attorney's fee question disposes of four of the five rulings Mr. Rawlings appeals, we will address the initial alteration of the judgment, the Motion to Disallow Attorney's Fees, the Motion to Grant Attorney's Fees, and the Rule 59 Motion to Amend the Judgment to its original form together.  The question of certification will be addressed separately.

The District Court had diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1).  App. 0001 (Complaint & Jury Demand).  This court has appellate jurisdiction granted by 18 U.S.C. § 1921.

A.  Attorney's Fees

"The award of attorney fees is a matter of law, which we review for correctness."  *Lewiston State Bank v. Greenline Equipment, L.L.C.*, 147 P.3d 951, 953 (Utah 2006) (quoting *Jensen v. Sawyers*, 130 P.3d. 325, 348 (Utah 2005)).  In other words, the standard

of review is *de novo* for the legal conclusions but review of factual findings is for clear

error. *Browder v. City of Moab*, 427 F.3d 717, 719 (10th Cir. 2005).

"Utah follows the traditional American rule, which states that 'attorney fees are not

recoverable by a prevailing party unless authorized by statute or contract.'" *Gallegos v.*

*Lloyd*, 178 P.3d 922, 924 (Utah Ct. App. 2008) (quoting *Faust v. Kai Techs.*, 15 P.3d

1266, 1269 (Utah 2000)).[1]  Mr. Rawlings was the prevailing party.  His cause of action for

wrongful termination sounded in tort, not as a claim for breach of contract or for violation

of a statute. *Peterson v. Rich*, 832 P.2d 1280, 1285 (Utah 1992) (clarifying that a

wrongful termination that violates public policy "is properly conceptualized as a tort").

Therefore, Mr. Rawlings is not entitled to attorney's fees unless his case falls

within an exception to the general rule.  While there are some exceptions, they are

narrowly drawn and inapplicable to the case at bar. *See, e.g., Utahns For Better Dental*

*Health-Davis, Inc. v. Rawlings*, 175 P.3d 1036, 1040-41 (Utah 2007) (private attorney

general doctrine); *Lewiston*, 147 P.3d at 956-57 (third-party tort rule).

Mr. Rawlings argues his case falls within the exception created in *Heslop v. Bank of*

*Utah*, 839 P.2d 828 (Utah 1992).  We find Mr. Rawlings' argument is without merit and

stems from confusion over *Heslop's* ultimate holding.  Mr. Heslop was wrongfully

terminated by, and therefore sued, the Bank of Utah. *Heslop*, 839 P.2d at 830.  Since Mr.

---

[1]Both parties rely upon Utah law when making their arguments.  Therefore, we will assume the parties agree Utah law governs. *See Mullin v. Travelers Indem. Co.*, 541 F.3d 1219, 1222 (10th Cir. 2008)  ("Because the parties' arguments rely on Utah law, we will assume that Utah law governs.").

Rawlings filed suit before *Peterson* v. *Rich*, and thus before the Utah Supreme Court clarified that a wrongful termination sounded in tort, Mr. Heslop sued for wrongful termination as both a tort and breach of contract. *Id.* at 836-37.

The trial court dismissed Mr. Heslop's tort-based wrongful termination claim by granting a motion for directed verdict, but permitted the contractual wrongful termination claim to go to trial. *Id.* The jury found the Bank's termination of Mr. Heslop breached his implied, but not written, employment contract. *Id.* at 840-41. The trial court refused to instruct the jury on awarding consequential damages, including attorney's fees for the contractual wrongful termination claim. *Id.* at 840. The Utah Supreme Court reversed and created an exception to the general rule against attorney's fees awards for wrongful terminations stemming from a breach of contract, thus in Heslop's case the fees were allowed. *Id.* at 840-41. Additionally, the discussion of granting attorney's fees was limited to the contractual wrongful termination claim and was separate and distinct from the reversal of a directed verdict for the tortious wrongful termination claim. *Id.* at 836-38, 840-41.

In the instant case Mr. Rawlings asserted a cause of action for wrongful termination in violation of public policy, not for wrongful termination in breach of his employment contract. The *Heslop* exception to the general rule barring an award of attorney's fees is inapplicable. Since the type of remedy available depends on which cause of action is addressed, Mr. Rawlings' assertion of a tort cause of action limited his recovery to tort remedies, thereby excluding the possibility of recovering attorney's fees. *See Peterson*,

832 P.2d at 1284.

Additionally, Mr. Rawlings' argument that because Title VII awards attorney's fees to a successful plaintiff for wrongful termination, this Court should also award attorney's fees for a public policy wrongful termination is unpersuasive. Title VII is a federal statute which has no relevance to the case at bar. 42 U.S.C. § 2000e-2. Mr. Rawlings alleged Utah common law was violated, not a federal statute. Additionally, Utah's legislature has not adopted Title VII in whole or in part so the awards granted by Title VII are inapplicable. As such, Mr. Rawlings' comparison is unconvincing.

B. Certification

Mr. Rawlings also asserts the district court erred by refusing to certify the question of whether attorney's fees should be granted to the Utah Supreme Court. We review the denial of a motion to certify for an abuse of discretion. *Copier Ex. Rel. Lindsey v. Smith & Wesson Corp.*, 138 F.3d 833, 838 (10th Cir. 1998).

Rule 41 of Utah Appellate procedure reads:

> The Utah Supreme Court may answer a question of Utah law certified to it by a court of the United States when requested to do so by such certifying court in accordance with the provisions of this rule if the state of the law of Utah applicable to a proceeding before the certifying court is uncertain.

Mr. Rawlings argues the district court was unsure of the law and desired a "clearer holding" on the issue from the Utah Supreme Court. App. Op. Brief, 19 (quoting App. 0046 (Memorandum Decision & Order)). Since "the language used in *Heslop* is at times

broad enough for it to appear that attorney's fees may also be available for public policy claims," the district court needed to certify the question. *Id.*

However, certification is only appropriate when a federal court is faced with a novel or unsettled question of law. *Arizonians for Official English v. Arizona*, 520 U.S. 43, 76 (1997). Whether attorney's fees should be granted here is neither novel nor unsettled. Additionally, "certification is not to be routinely invoked whenever a federal court is presented with an unsettled question of state law." *Armijo v. Ex Cam, Inc.*, 843 F.2d 406, 407 (10th Cir. 1988). If federal courts were required to certify every question on which there were "any possible argument that there is uncertainty on the Utah law" then federal courts would effectively lose jurisdiction in such cases. *Copier*, 138 F.3d at 839.

The district court did not act in an "arbitrary, capricious, whimsical, or manifestly unreasonable" manner when it chose to carefully read the *Heslop* case and correctly apply it to the instant case instead of certifying the question to the Utah Supreme Court. *See FDIC v. Oldenburg*, 34 F.3d 1529, 1555 (10th Cir. 1994). Therefore, we affirm.

## IV. CONCLUSION

"Characterizing a case as tort or contract orients the parties to the requisite elements of proof, permits anticipation of potential defenses, and defines remedies available." *Peterson*, 832 P.2d at 1284 (citing William L. Mauk, *Wrongful Discharge: The Erosion of 100 Years of Employer Privilege*, 21 Idaho L. Rev. 201, 208 (1985)). Mr. Rawlings filed suit for a public policy wrongful termination which is a cause of action sounding in tort. *Id.* at 1285. Since attorney's fees are generally only available in cases where fees are

- 7 -

authorized by statute or for breach of contract, and the *Heslop* exception did not apply, attorney's fees were not available to Mr. Rawlings. *See Gallegos*, 178 P.3d at 924. The question of awarding attorney's fees was neither novel nor complex and therefore the district court did not abuse its discretion by refusing to certify the question.

Accordingly, we AFFIRM.

Entered for the Court

William J. Holloway, Jr.
Circuit Judge